**Edith BRADY–LUNNY and Pulitzer Publishing Company, d/b/a The Pantagraph, Plaintiffs,**

v.

**Roger MASSEY, Sheriff of Dewitt County, Defendant,**

**and**

**United States of America, Intervenor.**

No. 01–3222.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 8, 2002.

Donald M. Craven, Craven Law Office, Springfield, IL, for Plaintiffs.

James A. Lewis, Office of U.S. Attorney, Springfield, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge:

*The Pantagraph* and its reporter want the Government to provide them with a list of federal inmates held in a county jail.

Are they entitled to it?

Security and privacy issues dictate the answer.

The answer is no.

### FACTS

Edith Brady–Lunny is a reporter for *The Pantagraph*, an Illinois newspaper

owned by the Pulitzer Publishing Company. On October 10, 2000, Brady–Lunny sent an Illinois Freedom of Information Act ("Illinois FOIA") request to Roger Massey, Sheriff of DeWitt County, asking for various information about prisoners in his custody. Sheriff Massey provided the information with respect to *state* inmates, but he did not furnish information about *federal* inmates.

On October 13, 2000, Brady–Lunny sent Sheriff Massey a second Illinois FOIA request. Her second request asked Sheriff Massey to provide information for "all inmates." But Sheriff Massey declined Brady–Lunny's request on the basis that the Illinois FOIA statute, 5 ILCS § 140, *et seq.* (West 1994), created no jurisdiction over federal concerns.

Following the denial of Brady–Lunny's Illinois FOIA request, Brady–Lunny, *The Pantagraph,* and the Pulitzer Publishing Company filed suit against Massey to require him to produce the requested information. The United States intervened in an effort to protect information about federal inmates. The Government then removed the Plaintiffs' case to this Court pursuant to the federal question doctrine. *See* 28 U.S.C. § 1331.

## STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). When determining whether factual issues exist, a "court must view all the evidence in the light most favorable to the non-moving party." *See Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir. 1985).

However, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *See McKenzie v. Illinois Department. of Transportation,* 92 F.3d 473, 479 (7th Cir.1996) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (1986)).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, he "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

## ANALYSIS

In this case, the Government refused to accede to the Plaintiffs' Illinois FOIA request for information about federal inmates because the Federal Bureau of Prisons (the "BOP") has a prohibition which states that lists of federal inmates "shall not be disclosed." *See* 28 CFR § 513.34(b). The Plaintiffs contend that the Government's refusal was improper since: 1) they made their request pursuant to the Illinois FOIA, not the Federal FOIA; 2) 28 CFR § 513 .34(b) is invalid because it is contrary to the Federal FOIA's general policy of full disclosure; and 3) even if 28 CFR § 513.34(b) is valid,

it is inapplicable here because the DeWitt County Jail is not a BOP institution.

■ Since the Government is the party refusing to produce the documents, it bears the burden of showing that the documents are not subject to disclosure. *See U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989).

## I

■ Although the State of Illinois "encourages a free flow in disclosure of information between government and the people", the Illinois FOIA "specifically exempts from government disclosure numerous categories of information and documents." *See Bowie v. Evanston Cmty. Consol. School Dist. No. 65,* 128 Ill.2d 373, 376, 538 N.E.2d 557, 558, 131 Ill.Dec. 182, 183 (1989). One such exemption is found at 5 ILCS § 140/7(1)(a). Under this provision, information need not be disclosed if it is "specifically prohibited from disclosure by federal or State law or rules and regulations adopted under federal or State law." *See id.*

■ Since 28 CFR § 513.34(b) states that lists of federal inmates "shall not be disclosed", the outcome of this case turns on the validity of the BOP's regulation. Like all federal agencies, the BOP has authority to make rules with respect to its operations. *See* 5 U.S.C. § 301 ("The head of an Executive department or military department may prescribe regulations for the government of his department …").[1] However, § 301 states that an agency's rulemaking authority "does not authorize withholding information from the public or limiting the availability of records to the public." *See id.* The Plaintiffs assert that § 301 makes 28 CFR § 513.34(b) invalid and requires the Government to turn over the requested information.[2]

The Plaintiffs are incorrect. The error in their argument is that they read § 301 to be a sort of trump card for any privacy or security interest the Government might assert. Read in this way, § 301 would require all federal agencies to supply documents upon request, regardless of their sensitivity. One can only imagine the effect this would have on national security, etc. The potential havoc is almost beyond catalog.

The federal FOIA protects records or information compiled for law enforcement purposes "to the extent that the production of such [materials] … could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See* 28 CFR § 552(b)(7)(C). In *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 751, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the Supreme Court considered whether the Government should be compelled to disclose a defendant's "rap sheet" to reporters. The Court, while discussing 28 CFR § 552(b)(7)(C), held:

1. Section 301 applies to agencies and, as the Seventh Circuit has stated, "[t]he Bureau of Prisons is part of the Department of Justice, and thus undeniably an 'agency' ". *See White v. Henman,* 977 F.2d 292, 293 (7th Cir.1992).

2. At one point in their brief, the Plaintiffs contend that 28 CFR § 513.34(b) is inapplicable here because the regulation deals only with federal inmates and the DeWitt County Jail is not a federal institution. Section 513.34 applies to all federal inmates. The term "[i]nmate means all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C.Code felony offenders; and persons held as witnesses, detainees, or otherwise." *See* 28 CFR § 500.1(c). Thus, a person may be an inmate regardless of whether the DeWitt County Jail is a BOP institution. As such, the Plaintiffs are wrong when they contend that 28 CFR § 513.34(b) is inapplicable.

as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

489 U.S. at 780, 109 S.Ct. at 1485.

Like disclosing a "rap sheet", providing a list of inmates' names here would be an unreasonable invasion of privacy. Some of the inmates under federal control are merely witnesses and detainees who have not been charged with or convicted of crimes. Releasing their names to the press or any other information seeker would stigmatize these individuals and cause what could be irreparable damage to their reputations. Thus, any watchdog function that disclosure would serve here is clearly outweighed by inmates' privacy interests.[3]

## II

■ If privacy interests were not a sufficient basis for the Government's refusal to disclose inmates' names, 5 U.S.C. 552(b)(7)(F) provides yet another justification for the Government's decision. Under 5 U.S.C. § 552(b)(7)(F), the Government is exempt from disclosing information about any individual that "could reasonably be expected to endanger life or physical safety." Risks such as these are always present in inmate populations given inmates' gang ties, interest in escape, and motive for violence against informants and rivals.

If the Government was forced to disclose inmates' names, security issues in any one of these areas would abound.

## III

In sum, the Court finds that the federal FOIA applies in this case; 28 CFR § 513.34(b) is valid; and that two exemptions— §§ 552(b)(7)(C) and 552(b)(7)(F)— allow the Government to refuse the Plaintiffs' disclosure requests.

*Ergo*, Plaintiffs' Motion for Summary Judgment · is DENIED and the Government's Motion for Summary Judgment is ALLOWED.

---

**3.** The Plaintiffs cite a Sixth Circuit case to argue that inmates' names do not implicate a reasonable privacy interest. In *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 97 (6th Cir.1996), the Sixth Circuit held that the disclosure of a defendant's mug shot would not be an unreasonable invasion of privacy when the names of the defendants "have already been divulged and in which the defendants themselves have already appeared in open court ..." *See id.* The case did not decide the issue before this Court—whether disclosing the names of witnesses, detainees, and convicts was an invasion of privacy. As such, the *Detroit Free Press* decision is inapposite.